IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-2340-JWL |
| RBS SECURITIES, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| ——————————————— | ) ) | |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-2649-JWL |
| WACHOVIA CAPITAL MARKETS, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |
| ——————————————— | ) ) | |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-2591-JWL |
| UBS SECURITIES, LLC, et al., | ) ) | |
| Defendants. | ) ) | |
| ——————————————— | ) | |

|  |  |  |
|---|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-2648-JWL |
| CREDIT SUISSE SECURITIES (USA) LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-2418-JWL |
| MORGAN STANLEY & CO., INCORPORATED, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

These related actions come before the Court on plaintiff's Motion in Limine to Admit Expert Statistical Sampling Testimony, which plaintiff has filed in each case. For the reasons set forth below, the motion is **granted to the extent set out herein**.

### **I.    Background**

Plaintiff National Credit Union Administration Board brings these suits as conservator and liquidating agent of various credit unions. The suits relate to a number

2

of offerings involving different residential mortgage-backed securities ("RMBS" or "certificates") purchased by the credit unions. Plaintiff asserts claims under federal and state law against sellers, underwriters, and issuers for the certificates, based on alleged untrue statements or omissions of material facts relating to each certificate.

On July 23, 2013, plaintiff filed the present motion in four of the remaining suits. Defendants in those suits filed a joint response brief on August 20, 2013, and plaintiff filed a consolidated reply brief on September 3, 2013. Since that time, the parties have filed and responded to various notices of supplemental authority. On March 17, 2013, plaintiff orally made the same motion in Case No. 13-2418-JWL (which case was initiated after the filing of the motion in the other cases), by which it incorporated its prior briefs.

By its motion, plaintiff seeks "a ruling approving the use of statistical sampling and for the admission of testimony by [plaintiff's] sampling expert, Dr. Charles D. Cowan," on the basis that Dr. Cowan's opinions, as set forth in a written report dated July 23, 2013, comply with the standards for expert testimony imposed by Fed. R. Evid. 702 and the *Daubert* line of cases. Dr. Cowan's report sets out a method by which he proposes to select loan files for statistical sampling. Under that method, Dr. Cowan would randomly select 25 loans for each of four strata, differentiated by the borrowers' FICO credit scores for the loans, for a total of 100 loans within each Supporting Loan Group ("SLG") that backed the certificates at issue in these cases. Dr. Cowan would also randomly select 25 backup loans for each stratum within each SLG that would be

used in random order if any of the original 25 loan files were missing. Dr. Cowan would then test the samples, using 11 variables, to ensure that they were sufficiently representative of the larger populations of loans. The sample loans would then be re-underwritten (by other persons), and Dr. Cowan would then extrapolate the results of the re-underwriting of the samples to the larger populations. Dr. Cowan offered the opinions that such a method of statistical sampling is scientifically valid and that his sample sizes, which would yield a confidence level of 95 percent with a margin of error of +/- 10 percent, are sufficient.

**II.     Analysis**

    *A.     Timing of Ruling*

1.     Defendants argue that the Court should not entertain plaintiff's motion for a *Daubert* ruling at this time.[1]  Defendants first argue that because Dr. Cowan's report envisions further steps to be taken and the issuance of future opinions, a *Daubert* ruling at this time is precluded by Fed. R. Evid. 702 and Fed. R. Civ. P. 26. The Court rejects this argument.

Defendants rely on Rule 702's statement that an expert may testify in the form of

---

[1] In their brief, defendants argued that consideration of plaintiff's motion was precluded by the provision in the Private Securities Litigation Reform Act ("PSLRA") that mandates a stay of proceedings during the pendency of any motion to dismiss. No motions to dismiss remaining pending in these cases, however. Thus, the Court need not address whether the stay provision applies to these cases brought by a governmental agency.

4

an opinion if, among other things, "the expert has reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702(d). Defendants argue that Dr. Cowan has merely proposed using a certain method and has not yet "applied" his method in this case, as he has not yet chosen the sample loans, tested those samples, or extrapolated any results. By the time Dr. Cowan testifies at trial, however, he will have completed the application of his sampling method to the particular loans at issue in this case. Dr. Cowan's further opinions, after application of his method, must be disclosed, and defendants will then have the opportunity to seek exclusion of those opinions under Rule 702. That rule, on its face, does not prohibit either the issuance of multiple expert reports by a single expert working in stages or the consideration of a Court of one prong of Rule 702 (for instance, reliability) at a time. Nor have defendants cited any authority interpreting Rule 702 as they do.

Defendants also rely on Rule 26(a)(2)'s requirement of an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Again, however, the cited rule does not prohibit an expert from issuing multiple reports disclosing discrete opinions, and defendants have failed to cite caselaw supporting such an interpretation.[2] Indeed,

---

[2]Defendants cite only one court's statement that "the terms of Rule 26(a)(2)(B) do not contemplate piecemeal disclosure, but rather contemplate the production of a single document comprising all the required elements." *See Giladi v. Strauch*, 2001 WL 388052, at *7 (S.D.N.Y. Apr. 16, 2001). In *Giladi*, however, the court made that statement in concluding that a party had not acted improperly in failing to disclose some
(continued...)

experts commonly issue multiple reports in a single case; for instance, a medical expert may issue a separate report for each of multiple plaintiffs that have brought an action. The Court concludes that neither Rule 702 nor Rule 26 precludes the Court's ruling on plaintiff's motion at this time.

2. Defendants also argue that plaintiff's motion is premature because fact discovery has not yet been completed. Defendants argue specifically that the Court cannot determine whether Dr. Cowan's testimony will be helpful to the jury, *see* Fed. R. Evid. 702(a), until all of the facts of the case are known. The Court need not decide at this time, however, whether these particular opinions will ultimately be helpful. These opinions by Dr. Cowan provide the foundation for future opinions by him and others. The experts' ultimate conclusions may then be tested for helpfulness as required by Rule 702. Thus, if discovery reveals that some aspect of Dr. Cowan's testimony will not be helpful for some reason, defendants will be free to seek to exclude that testimony before trial. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 2013 WL 6231713, at *16 (C.D. Cal. Dec. 2, 2013) (Pfaelzer, J.) (Court cannot determine whether results of sampling will be helpful until the final results are known).

Defendants also assert that Dr. Cowan's sampling method cannot yet be shown

---

[2](...continued)
things required by the rule, such as the expert's qualifications and publications, before the party was in a position to disclose the expert's opinions. *See id.* In this case, plaintiff's Rule 26 report for Dr. Cowan contains all of the required disclosures for the particular opinions contained in the report. The court in *Giladi* did not interpret Rule 26 to prohibit an expert's disclosure of discrete opinions in multiple reports.

6

to be reliable at this stage, for four reasons.

  a. First, defendants argue that because Dr. Cowan has not specifically identified and applied the specific method of random selection of the loans, there can be no guarantee that he will in fact implement his method as designed and intended. Dr. Cowan's present opinion, however, is that his proposed method is valid. Dr. Cowan's implementation of his method must be set forth in a future report, and if his implementation is improper or unreliable, defendants may challenge that implementation at that time. The fact that an expert could botch the use of a method does not make the method itself unreliable.

  b. Second, defendants point to the fact that Dr. Cowan has not yet tested any samples to confirm that they are random and representative. Defendants note the possibility that if certain loan files are missing because of the same reason, then the sample could prove biased, for instance by overrepresenting or underrepresenting delinquent loans. Defendants further speculate that discovery could suggest that particular variables should be considered in determining a sampling method. The Court rejects this argument as well. Again, Dr. Cowan has not yet offered his opinions concerning his testing of the representativeness of any sample loans that are picked. If defendants believe that the sample loans do not prove to be sufficiently representative, they will be free to raise that challenge when Dr. Cowan offers his further opinions. Moreover, defendants have not pointed to any particular facts that may arise in discovery that could make the proposed sampling method unreliable. Nor have defendants offered

any expert opinion of their own to the effect that the reliability of the sampling method cannot be determined at this juncture. *See In re Massachusetts Life Ins. Co. Litig.*, No. 11-cv-30039-MAP, slip. op. at 3-4 (D. Mass. Mar. 5, 2013) (Neiman, Mag. J.) (fact discovery is not necessary for an initial determination of the reliability of the sampling method itself; defendants are not foreclosed from a later *Daubert* challenge of plaintiff's experts' ultimate opinions based on the samples).

      c.      Third, defendants point to other RMBS cases in arguing that there is no guarantee that plaintiff will in fact succeed in re-underwriting all of the sample loans selected. That possibility does not bear on whether the sampling method is reliable, however. If any such failure by plaintiff makes Dr. Cowan's ultimate conclusions unreliable for some reason, defendants may raise that issue after plaintiff discloses those conclusions.

      d.      Fourth, defendants point to the fact that Dr. Cowan has not yet identified the extrapolation methodology that he will use. Defendants rely on the following statement from a report by Dr. Cowan in a similar case: "The process of extrapolation of the results from the sample to the population is an integral part of the planning for and acceptance of sampling as a viable scientific method." Defendants argue that Dr. Cowan has thus admitted that the particular extrapolation method must be considered before his sampling methodology may be deemed reliable. The Court does not agree with defendant's interpretation of Dr. Cowan's statement, however. The entire context of the statement reveals that Dr. Cowan was in fact making the point that sampling is only valid

8

if its results are eventually and reliably extrapolated to the entire population from which the sample is drawn. Dr. Cowan did not state that the particular extrapolation method must be determined before the sampling method may be considered reliable. Nor have defendants provided any authority or evidence, from their own expert or otherwise, to suggest that the absence of a chosen extrapolation method makes the sampling method unreliable. Dr. Cowan has yet to offer his extrapolation opinions; if, after plaintiff discloses such opinions, defendants believe that the chosen extrapolation method is not reliable in conjunction with this sampling method, they may make such a *Daubert* challenge at that time. Accordingly, the Court rejects defendants' argument that the sampling method cannot be shown to be reliable at this time. *See Countrywide*, 2013 WL 6231713, at *12 (rejecting argument based on the lack of an extrapolation method; extrapolation methodology may be reviewed for reliability once such expert opinions have been submitted); *Massachusetts Mutual Life Ins. Co. v. Residential Funding Co., LLC*, 2013 WL 6490125, at *5-6 (D. Mass. Dec. 9, 2013) (Saris, J.) (rejecting same argument, based on Dr. Cowan's clarification that "it is not necessary to choose a method of extrapolation *before* reunderwriting in order to have a valid sample design;" concluding that "[s]o long as Dr. Cowan ultimately employs an extrapolation technique which is itself reliable, the failure to specify the specific method in his Report does not make his sampling methodology excludable in this preliminary review"); *FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *11 (S.D.N.Y. Dec. 3, 2012) (Cote, J.) (to the extent Dr. Cowan has not yet opined definitively on the choice of an extrapolation

9

method, defendants' arguments relating extrapolation to sampling are premature).

3. Defendants also argue that the Court should not grant the relief requested by plaintiff at this time because such a ruling would not in fact serve the interests of efficiency. Defendants argue that in the usual case—even in a complex case—the plaintiff chooses its expert and commissions an expert analysis while assuming the risk that the expert's opinions may eventually fail to pass muster under *Daubert*. Defendants further argue that there is no good reason to change the usual procedure in these cases because there are no real efficiencies to be gained here. Defendants note that the cost of discovery will not necessarily be lessened because they will still be free to engage in discovery relating to loans that are not included in the samples chosen by plaintiff's expert. Defendants also suggest that further *Daubert* proceedings are inevitable whether or not the Court rules on this motion at this time.

The Court concludes, however, that a present ruling on any challenges to the opinions in Dr. Cowan's report may indeed serve interests of efficiency. As plaintiff points out, an early ruling concerning sampling avoids significant costs incurred in re-underwriting if the sampling method is deemed unreliable. Similarly, an early ruling avoids any delay that would occur if the sampling method were deemed unreliable at the end of discovery and plaintiff were then forced to undertake a different sampling analysis. Numerous other courts have issued early *Daubert* rulings concerning Dr. Cowan's sampling methodology in similar cases, and the Court agrees with those courts that it makes sense to resolve this issue, relating to a limited set of opinions, at this time.

10

*See FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *3 (S.D.N.Y. Dec. 3, 2012) (Cote, J.) ("Early vetting of the parties' sampling protocols is particularly important in this case, as the plaintiff and defendants should not be required to begin the costly and time-consuming process of reunderwriting without some assurance that the samples will be deemed admissible."); *In re Massachusetts Life Ins. Co. Litig.*, No. 11-cv-30039-MAP, slip. op. (D. Mass. Mar. 5, 2013) (Neiman, Mag. J.) (granting motion for an early schedule for *Daubert* challenge to sampling methodology); *Massachusetts Mutual Life Ins. Co. v. Residential Funding Co., LLC*, 2013 WL 6490125, at *5 (D. Mass. Dec. 9, 2013) (Saris, J.) ("Early resolution of the viability of the sampling methodology makes sense as a case management matter."); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 2013 WL 6231713 (C.D. Cal. Dec. 2, 2013) (Pfaelzer, J.); *National Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 11-6521-GW, minute sheet and transcript (C.D. Cal. Feb. 10, 2014) (Wu, J.) (granting plaintiff's early motion in limine to admit expert statistical sampling testimony by Dr. Cowan); *National Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705, order (S.D.N.Y. Apr. 30, 2014) (Cote, J.) (same).

Defendants argue in their brief that a majority of courts have rejected requests for early rulings of this type, but, as shown by the rulings cited in the preceding paragraph, the overwhelming trend in RMBS cases is to allow for an early *Daubert* ruling on the sampling methodology. Moreover, in almost all of the cases cited by defendants, the court did not set forth any reasoning or analysis concerning the efficiency of an early *Daubert* determination other than to point out that no expert report had been submitted

11

to the court for consideration. One case cited by defendants did contain some analysis of this issue of efficiency. *See Prudential Ins. Co. of Am. v. Goldman Sachs & Co.*, No. 12-6590, order and transcript (D.N.J. Sept. 25, 2013) (Arleo, Mag. J.). In *Prudential*, the magistrate judge denied a request for an early schedule for an expert report and *Daubert* motion, on the bases that the likelihood of future *Daubert* proceedings weighed against a finding that efficiency would be served and that it would be unfair to the defendants if the plaintiff could strengthen its expert's opinions after learning of potential weaknesses in the early *Daubert* procedure. *See id.* Such concerns are not present in these cases, however. First, the parties have already briefed the present motion, and future *Daubert* proceedings are a virtual certainty, whether or not the Court rules on the sampling methodology at this time. The efficiency comes from the fact that the parties will know now whether plaintiff's sampling methodology passes muster under *Daubert*. Second, because this order does not identify any potential weaknesses in Dr. Cowan's testimony, there is no potential for the kind of unfairness feared by the *Prudential* court. That is especially true given the many similar cases in which the reliability of Dr. Cowan's sampling methodology has already been litigated. Accordingly, the Court rejects defendants' argument that the early determination sought by plaintiff will not serve interests of efficiency.

4. Finally, defendants request that, if the Court does rule at this time, they be given the opportunity to depose Dr. Cowan and retain their own expert to offer opinions on the sampling methodology. The Court denies that request. Plaintiff placed the issue

12

of the reliability of certain expert opinions before the Court, and defendants were obliged to secure any evidence needed to address the issue. Defendants have had many months since the filing of plaintiff's motion in which to seek its own expert opinions or to request a deposition of Dr. Cowan. Moreover, these and other defendants have had the opportunity to depose Dr. Cowan and to have their own experts analyze this issue in numerous other cases. The issue is ripe for resolution at this time.

### B. *Rule 702 /* Daubert *Analysis*

The Court then turns to the merits of plaintiff's request, namely the reliability of Dr. Cowan's sampling method. On that issue, defendants have only asserted those arguments discussed above that relate to whether Dr. Cowan's method may be deemed reliable in the absence of his implementation of the method and his issuance of further opinions. As noted above, the fact that those steps have not yet been undertaken does not undermine the reliability of the sampling methodology itself, and defendants will have the opportunity in the future to challenge additional opinions by this and other experts. *See supra* Part II.A.2.

Defendants have not argued that sampling in general is not appropriate in this case, or that Dr. Cowan's proposed methodology is unreliable (for instance, because the sample size is too small, the margin of error is too large, or the stratification is unreliable). Dr. Cowan has explained in his report why his sampling methodology is valid, is reliable, and follows generally accepted scientific principles. Defendants have not provided any expert authority to the contrary. Moreover, courts in recent RMBS

cases have found this sampling methodology by Dr. Cowan to be reliable. *See, e.g.*, *FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885 (Cote, J.); *Massachusetts Mutual Life Ins. Co. v. Residential Funding Co., LLC*, 2013 WL 6490125 (Saris, J.); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 2013 WL 6231713 (Pfaelzer, J.); *National Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 11-6521-GW, minute sheet and transcript (Wu, J.); *National Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705, order (Cote, J.). Accordingly, the Court concludes that the particular opinions offered by Dr. Cowan in his report are reliable for purposes of Rule 702 and the applicable *Daubert* standards.

The Court does make one final note about the limited scope of its ruling. Plaintiff has requested an order "approving the use of statistical sampling," and the Court has indeed ruled that the use of such sampling in this case, pursuant to Dr. Cowan's methodology, survives a challenge under Rule 702 and *Daubert*. As the Court has noted throughout this order, however, defendants remain free to assert *Daubert* challenges to any future opinions by Dr. Cowan or others based on the implementation of this sampling methodology, including the results of representativeness testing, re-underwriting, and extrapolation. Defendants will only be precluded from asserting *Daubert* challenges that go to the sampling methodology itself and that could have been asserted at this time. Plaintiff also requests a ruling "admitting the expert testimony" of Dr. Cowan. The Court declines to rule at this time that Dr. Cowan's testimony is admissible, however, as his ultimate conclusions may prove to be unreliable or otherwise

14

inadmissible under Rule 702 or some other rule of evidence. Accordingly, plaintiff's motion is granted only to the extent set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 11-2340-JWL, plaintiff's motion in limine regarding statistical sampling testimony (Doc. # 215) is **granted** as set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 11-2649-JWL, plaintiff's motion in limine regarding statistical sampling testimony (Doc. # 33) is **granted** as set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 12-2591-JWL, plaintiff's motion in limine regarding statistical sampling testimony (Doc. # 66) is **granted** as set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 12-2648-JWL, plaintiff's motion in limine regarding statistical sampling testimony (Doc. # 71) is **granted** as set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 13-2418-JWL, plaintiff's oral motion in limine regarding statistical sampling testimony (Doc. #

39) is **granted** as set forth herein.

IT IS SO ORDERED.

Dated this 30th day of April, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge