IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD,<br><br>          Plaintiff,<br>     v.<br><br>UBS SECURITIES, LLC, et al.,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)   Case No. 12-2591-JWL<br>)<br>)<br>)<br>)<br>) |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD,<br><br>          Plaintiff,<br>     v.<br><br>CREDIT SUISSE SECURITIES (USA) LLC, et al.,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)   Case No. 12-2648-JWL<br>)<br>)<br>)<br>)<br>)<br>) |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD,<br><br>          Plaintiff,<br>     v.<br><br>MORGAN STANLEY & CO., INCORPORATED, et al.,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)   Case No. 13-2418-JWL<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff's motion for reconsideration of the Court's dismissal of certain claims against UBS Securities LLC ("UBS") (Case No. 12-2591, Doc. # 224); the Credit Suisse defendants (collectively "Credit Suisse") (Case No. 12-2648, Doc. # 225); and the Morgan Stanley defendants (collectively "Morgan Stanley") (Case No. 13-2418, Doc. # 172). In those rulings, the Court held that, in light of its ruling that the limitations period imposed by the Extender Statute, 12 U.S.C. § 1787(b)(14) could not be extended by tolling agreement, plaintiff could not alternatively rely on the doctrine of equitable estoppel to avoid dismissal of certain claims as untimely. The Tenth Circuit then issued its ruling in *NCUAB v. Barclays Capital Inc.*, __ F.3d __, 2015 WL 876526 (10th Cir. Mar. 3, 2015), a related case, and it held that plaintiff was not precluded from asserting equitable estoppel. Plaintiff now seeks reconsideration of the Court's rulings concerning equitable estoppel in light of the Tenth Circuit's decision in *Barclays*. The Court **grants** that motion for reconsideration as applied to UBS and Credit Suisse, but it **denies** the motion as applied to Morgan Stanley.

### I.     Governing Standard

As this Court has noted previously, *see Johnson v. Simonton Bldg. Props., Inc.*, 2009 WL 902409 (D. Kan. Mar. 31, 2009) (Lungstrum, J.), a motion for reconsideration of a dispositive ruling involving only some claims in a case is not governed by Rule 59(e) (because no judgment has been entered) or by Local Rule 7.3 (which provides standards for reconsideration of non-dispositive rulings, while referring to Rules 59(e) and 60 for

2

reconsideration of dispositive rulings). *See id.* at *2. Nevertheless, "it is well within the court's discretion to revise an interlocutory order at any time prior to the entry of final judgment." *See id.* (citations omitted); *see also* Fed. R. Civ. P. 54(b) (orders adjudicating fewer than all claims may be revised before final judgment); Fed. R. Civ. P. 60(b)(6) (court may relieve a party from an order for any reason justifying relief). In such an instance, this Court has applied the standards for reconsideration under Rule 59(e) and Local Rule 7.3(b), which allow a party to seek reconsideration based on a change in controlling law. *See Johnson*, 2009 WL 902409, at *2.

In this case, plaintiff asserts that *Barclays* changed the controlling law with respect to its ability to rely on the doctrine of equitable estoppel in these circumstances. Because in *Barclays* the Tenth Circuit effectively reversed this Court's ruling that equitable estoppel was not available as an alternative to reliance on a tolling agreement to avoid operation of the Extender Statute's limitations period, the Court agrees that it is appropriate to reexamine its prior rulings in these cases in light of *Barclays*.[1]

## II. The *Barclays* Opinion

In the related action against Barclays, in dismissing all claims as time-barred, the Court relied on its prior rulings in the case against Credit Suisse that the Extender

---

[1] In their responses to this motion, defendants requested that the Court defer any reconsideration until the Tenth Circuit issued its mandate in *Barclays*. Since those responses, however, the Tenth Circuit has denied Barclays's motion for rehearing and issued its mandate in that case. Thus, defendants' request has become moot.

3

Statute's limitations period could not be tolled by tolling agreement and that plaintiff could not rely in the alternative on the doctrine of equitable estoppel. On appeal, the Tenth Circuit agreed that the Extender Statute's limitations period could not be tolled by agreement. *See Barclays*, 2015 WL 876526, at *4. The Tenth Circuit further held, however, that plaintiff was not precluded from relying on equitable estoppel in that case. *See id.* at *5-7. The court began its analysis of that issue as follows:

> Setting aside the contractual agreement *to toll* the statute of limitations—which, we have held, is unenforceable—we are left with Barclays' *additional* promise *not to assert* a statute of limitations defense in litigation that counted time agreed to be excluded, even if the limitations defense would be successful as asserted.

*See id.* at *5 (emphasis in original). The Tenth Circuit then concluded that the Extender Statute imposed a statute of limitations, not a statute of repose to which estoppel could not apply. *See id.* at *5-7. The court then concluded:

> Here, Barclays expressly promised not to raise the statute of limitations defense if doing so would require inclusion of time periods that the parties agreed to exclude, and we hold Barclays to that promise.
>
> It is often the case that an affirmative defense is meritorious and would be successful if raised, but the defense is nevertheless unavailable to the party seeking to assert it, either because that party neglected to raise it in the timely fashion or because that party is estopped from asserting it. . . . So it is unremarkable that a party can be estopped from asserting a statute of limitations defense, particularly when its promise not to do so is limited in scope, between two parties of equal bargaining strength, and facilitates a strong public policy of encouraging settlements.

*See id.* at *7.

### III.     Credit Suisse (Case No. 12-2648)

Plaintiff filed its action against Credit Suisse on October 12, 2012, based on 20 certificates. By Memorandum and Order of April 8, 2013, the Court ruled on Credit Suisse's motion to dismiss the claims as time-barred. The Court ruled that because plaintiff did not file suit within the Extender Statute's three-year limitations period with respect to 19 of the certificates, claims based on those certificates would be time-barred in the absence of some basis for tolling or estoppel. The Court ruled that plaintiff could not rely on the parties' tolling agreement or equitable estoppel, but it rejected Credit Suisse's argument that *American Pipe* tolling, which plaintiff had asserted with respect to the federal claims based on eight certificates, was unavailable as a matter of law. Accordingly, the Court dismissed as time-barred state-law claims based on all certificates and federal claims based on 12 certificates.

Plaintiff and Credit Suisse entered into a tolling agreement that was effective from August 16, 2011, to September 12, 2012. Paragraph 3 of the agreement included the following provision:

> The Parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any time-related defense in connection with the Potential Claims or Counterclaims or Defenses.

Thus, like Barclays, Credit Suisse, in a promise separate from the agreement to toll any limitations period, agreed not to rely on the passage of time during the tolling period in asserting a limitations defense. As noted above, in *Barclays* the Tenth Circuit held that

5

plaintiff could rely on such a separate express promise in asserting equitable estoppel, regardless of the unenforceability of the parties' agreement to toll any limitations period.

Credit Suisse attempts to distinguish its case from *Barclays* by pointing to the following additional language, absent from the agreement in *Barclays*, found in Paragraph 6 of Credit Suisse's agreement with plaintiff:

> [T]his tolling agreement shall not revive or extend any period of limitations or repose if such period already had expired as of the date of execution of this tolling agreement, nor shall the execution of this tolling agreement limit, impair, or affect in any way any time-related defenses or any other arguments or defenses to the Potential Claims that the Potential Defendants may have or in the future may have as of the date of execution of this tolling agreement.

Credit Suisse argues that it preserved by this language its limitations defense in the event that the tolling agreement was deemed not to extend the Extender Statute's limitations period. The Court disagrees. The only reasonable interpretation of this provision is that the tolling agreement did not revive any claims already time-barred at the time of the agreement and that Credit Suisse did not give up any limitations defense that would have succeeded as of that date. Under the Extender Statute, plaintiff's claims against Credit Suisse were not time-barred at the time of the parties' execution of the tolling agreement; thus, this provision does not by its terms preserve Credit Suisse's present argument that plaintiff's claims are time-barred.

In order to succeed on its limitations defense, Credit Suisse must count the period of time to which the tolling agreement applied, and Credit Suisse separately and expressly promised not to rely on that time in asserting any limitations defense. Thus, under

*Barclays*, plaintiff's reliance on that promise in asserting equitable estoppel is not precluded solely by the fact that the Extender Statute's limitations period may not be tolled by agreement.

Credit Suisse also appears to argue that it cannot be equitably estopped from asserting a limitations defense that includes the tolling agreement period because plaintiff cannot have reasonably relied on its promise not to assert such a defense. As plaintiff points out, Credit Suisse and the other defendants did not make such an argument in opposing plaintiff's equitable estoppel argument, which plaintiff asserted in opposition to defendants' motions to dismiss; thus, any argument concerning reliance or any other element of equitable estoppel is not properly before the Court on this motion for reconsideration. Moreover, any consideration of the element of reliance may depend on particular facts, and the Court cannot say that plaintiff cannot have reasonably relied as a matter of law; thus, the Court does not believe that the issue is properly resolved on a motion to dismiss.[2]

Accordingly, the Court grants plaintiff's motion for reconsideration in this action, it vacates its earlier dismissal of claims against Credit Suisse, and Credit Suisse's motion

---

[2]Although the Tenth Circuit referred to plaintiff's reasonable reliance in *Barclays*, the Court does not read that opinion as determining as a matter of law that plaintiff has satisfied the reasonable reliance element of equitable estoppel. This Court has not yet passed on whether plaintiff can satisfy the elements of that doctrine in any of the cases; rather, the effect of the *Barclays* decision is that plaintiff's equitable estoppel argument is not precluded by the mere fact that the tolling agreements may not extend the Extender Statute's limitations period.

7

to dismiss based on timeliness is denied with respect to all claims against it.

### IV.     Morgan Stanley (Case No. 13-2418)

Plaintiff filed its action against Morgan Stanley on August 16, 2013, based on 21 certificates. By Memorandum and Order of December 27, 2013, the Court dismissed as time-barred all claims based on 20 of those certificates and all state-law claims, based on its rulings in the other cases, leaving a federal claim based on one certificate with respect to which plaintiff had validly asserted *American Pipe* tolling. Moreover, because two of the Morgan Stanley defendants were not named as defendants with respect to the remaining claim, the Court dismissed those two defendants from the case entirely. Plaintiff now seeks reconsideration of the Court's rejection of its equitable estoppel argument as applied to Morgan Stanley.

Plaintiff and Morgan Stanley entered into a tolling agreement on September 23, 2011, and they extended that agreement numerous times (without materially altering the agreement's terms) until the agreement expired on August 14, 2013. Plaintiff concedes that its tolling agreement with Morgan Stanley did *not* include a separate express promise by Morgan Stanley not to rely on the period of the tolling agreement in asserting a limitations defense. Thus, Morgan Stanley argues that *Barclays* does not require that plaintiff be permitted to pursue an equitable estoppel argument in its case.

As noted above, the Tenth Circuit took care to distinguish an agreement to toll the statute of limitations from an additional promise not to assert a limitations defense, and

8

it based its decision in that case on the defendant's express promise not to include a certain period in asserting any limitations defense. Plaintiff notes that the Tenth Circuit did not state in *Barclays* that equitable estoppel could *only* be based on such an express promise. Plaintiff thus argues that its assertion of equitable estoppel in this case may be based on an implied promise by Morgan Stanley and general principles of estoppel.

The Court rejects that argument by plaintiff. In arguing for an implied promise, plaintiff points to the fact that both parties wished to delay the initiation of a lawsuit, and it argues that the parties' intent to toll the statute of limitations shows an intent not to assert any limitations defense at all. Those circumstances on which plaintiff relies, however, would be common to any tolling agreement. The Tenth Circuit held in *Barclays* that the Extender Statute's limitations period, by the terms of that statute, cannot be extended by tolling agreement. If equitable estoppel could be based solely on attributes of the tolling agreement—and not on the additional express promise cited by the Tenth Circuit—then that holding by the Tenth Circuit, along with that court's distinction between an agreement to toll and a promise not to assert, would be eviscerated. The Tenth Circuit allowed plaintiff to pursue its theory of equitable estoppel because of an express promise distinct from the tolling provision, and it would violate the plain terms of the Extender Statute if a plaintiff could circumvent the statute's limitations period in the absence of such an express promise.

Plaintiff also argues that Morgan Stanley waived any ability to contest the enforceability of the tolling agreement by representing in the agreement its intent that the

9

agreement be valid and binding. Such an acknowledgment, however, falls short of the a clear waiver of a defense in the event that the agreement proves unenforceable. Again, the Tenth Circuit has effectively required a separate express promise, and no such promise was given by Morgan Stanley.

Accordingly, the Court reaffirms its prior ruling that plaintiff is precluded from asserting that Morgan Stanley is equitably estopped from asserting its limitations defense. Thus, the Court denies plaintiff's motion for reconsideration of its rulings on Morgan Stanley's motion to dismiss on the basis of timeliness.

### V. UBS (Case No. 12-2591)

Plaintiff filed its action against UBS on September 6, 2012, based on 22 certificates. By Memorandum and Order of September 3, 2013, the Court dismissed as time-barred the claims based on 10 of those certificates, based on its rulings in the other cases, leaving 12 certificates with respect to which plaintiff had asserted *American Pipe* tolling. On April 22, 2014, the Court dismissed the remaining state-law claims against UBS, on the basis that *American Pipe* tolling did not apply to such claims in this case. Plaintiff now seeks reconsideration of the Court's rejection of its equitable estoppel argument as applied to UBS.

Plaintiff and UBS entered into a tolling agreement effective December 29, 2010. In Paragraph 1 of that agreement, after agreeing to toll the limitations period, the parties agreed as follows:

> The parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any time-related defense in connection with the Potential Claims or Counterclaims or Defenses.

On March 28, 2011, plaintiff and UBS executed an "extension" that amended the tolling agreement by substituting May 31, 2011, for the original termination date of March 30, 2011.  In October 2011, after a period without any tolling by agreement, the parties executed a "second tolling agreement" with an effective tolling period beginning October 5, 2011.  That agreement contained the following separate promise in Paragraph 1:

> The parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any Time-Related Defense.

The "second tolling agreement" also incorporated by reference all terms from the original tolling agreement except for Paragraphs 1 and 2 of the original agreement and except for the substitution of a termination date of February 28, 2012.

On February 29, 2012, the parties executed an "extension of the second tolling agreement."  That extension included a provision in Paragraph 1 by which the parties agreed to toll the limitations period for claims, but unlike the previous agreements, the tolling provision was expressly agreed "[t]o the extent permitted by applicable law."  The second extension did *not* include any separate promise that UBS would not rely on the tolling period in asserting any limitations defense.  In the tolling provision, the second extension repeated the second agreement's tolling date of October 5, 2011, and it incorporated by reference all terms from the original tolling agreement except for

11

Paragraphs 1 and 2 of the original agreement and except for the substitution of a termination date of August 28, 2012.

Thus, UBS's case offers a hybrid of the cases involving Credit Suisse and Morgan Stanley, in the sense that in the first two tolling agreements UBS did make a separate promise not to rely on the tolling period in asserting a limitations defense, but it did not make any such express promise in the extension of the second agreement.

The Court begins by applying the conclusions that it reached above with respect to Credit Suisse and Morgan Stanley. First, UBS has not attempted to distinguish its express promise from the promise by Barclays on which the Tenth Circuit relied. The Court also rejects as premature any argument by UBS concerning plaintiff's reasonable reliance. Thus, for the effective period to which UBS's express promise applies, the Court concludes that plaintiff is not precluded from attempting to show that UBS is equitably estopped from relying on that period in asserting a limitations defense. Second, the Court rejects any argument by plaintiff based on an implied promise or general principles of estoppel for any tolling period with respect to which UBS made no express promise. Thus, the Court's task is to determine the period to which UBS's express promises apply.

UBS does not dispute that the tolling periods with respect to which UBS made a separate express promise subject to the *Barclays* ruling—the period covered by the original tolling agreement as extended, combined with the tolling period of the second tolling agreement prior to extension—provide a sufficient number of days, if tolled, to make plaintiff's claims timely under the Extender Statute. Thus, equitable estoppel (if

ultimately proved) would save plaintiff's claims even without tolling any period of time after the execution of the second extension, which did not contain any separate express promise by UBS.

To combat the effect of that calculation, UBS argues that plaintiff should be precluded from asserting equitable estoppel with respect to any period covered by the second tolling agreement. UBS notes that the second extension, by again defining the tolling period to begin on October 5, 2011, provided for an effective tolling period encompassing the entire tolling period of the second agreement. Based on the repetition of that starting date, UBS argues that the terms of the second extension—including the lack of a separate promise—applied to the entire tolling period dating back to October 5, 2011. UBS also argues that the addition of the language agreeing to tolling "[t]o the extent permitted by applicable law" operated to preserve UBS's ability to assert a limitations defense relying on the tolling period in the event that the tolling agreement proved unenforceable.

The Court rejects this argument by UBS. The parties did not add a new term in the second extension preserving UBS's ability to rely on the period covered by the entire second agreement in asserting a limitations defense; rather, the second extension merely failed to include the same separate promise made in the earlier agreements. UBS's promise not to use the time covered by the second agreement would still stand unless revoked, and UBS has provided no authority to support its argument that the omission of the promise in the second extension could have revoked the promise made previously. The

13

Court does not agree that the mere omission of the promise effected an implied revocation, as the omission is most reasonably interpreted to mean that UBS would not be bound by any such promise as it related to future periods of time covered by the parties' tolling agreement. The Court also rejects UBS's argument that the promise did not survive the expiration of the second agreement, either at the time of the second extension or at the time of the expiration of that extension. Again, the only reasonable interpretation of these tolling agreements is that the agreements relating to certain periods of time would survive the termination of the agreements; otherwise one party could terminate a tolling agreement (which could be terminated by either party upon notice), and no time would be excluded in any calculation of the limitations period, thereby robbing the agreement of any effect.

Thus, the Court is not persuaded that the repetition of the second agreement's starting date compels an interpretation that somehow undoes UBS's previous promise. The parties incorporated the terms of the *original* tolling agreement into the second extension; thus, the reference to the second agreement's starting date was necessary to define the entire period being tolled. The use of that date is not reasonably interpreted to include an implied revocation of UBS's previous promise. The Court notes in that regard that the second extension defined the tolling period to begin on October 5, 2011, but its terms do not make the entire second extension *effective* retroactively to that date.

Nor is such a promise implied by the enforceability condition added to the tolling provision. That language supports an argument that UBS preserved the ability to count the

14

succeeding days in asserting a limitations defense in the event the tolling agreement proved unenforceable (as has occurred). It does not, however, purport to preserve any defenses relating to any other period of time.

In summary, UBS promised not to rely on certain periods of time in asserting a limitations defense, and those periods would be sufficient in total to make plaintiff's claims against UBS timely under the Extender Statute, assuming that plaintiff ultimately satisfies the requirements for equitable estoppel. Under *Barclays*, the fact that the tolling agreements do not operate to extend the applicable limitations period does not preclude plaintiff's assertion of equitable estoppel. Accordingly, the Court grants plaintiff's motion for reconsideration in this action, it vacates its earlier dismissal of claims against UBS, and UBS's motion to dismiss based on timeliness is denied with respect to all claims against it.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 12-2591, plaintiff's motion for reconsideration (Doc. # 224) is hereby **granted**, as more fully set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 12-2648, plaintiff's motion for reconsideration (Doc. # 225) is hereby **granted**, as more fully set forth herein.

IT IS THEREFORE ORDERED BY THE COURT THAT, in Case No. 13-2418, plaintiff's motion for reconsideration (Doc. # 172) is hereby **denied**.

IT IS SO ORDERED.

Dated this 27th day of May, 2015, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge